SHIRLEY JEAN WEBB AND SAMUEL ASHE WEBB, PLAINTIFFS v.
IRA M. HARDY, II, M.D., DEFENDANT

No. COA06-907

(Filed 20 March 2007)

## Medical Malpractice; Statutes of Limitation and Repose— negligence—continuing course of treatment doctrine

The trial court did not err in a medical malpractice case by granting summary judgment in favor of defendant doctor based on expiration of the pertinent statute of limitations even though plaintiffs contend the doctrine of continuing care tolled the statute of limitations and therefore extended the period of time to file the first action, because: (1) applying N.C.G.S. §§ 1-52(16) and 1-15(c) reveals that the three-year statute of limitations began to run on 30 November 1999, the date of defendant's last act giving rise to the cause of action (i.e. the surgery); (2) plaintiff's first action was filed 25 November 2003 which was outside of the three-year limitations period; (3) the fact the subject complaint was filed within twelve months of plaintiffs' dismissal of the first complaint cannot save this matter from summary judgment in favor of defendant; and (4) the continuing course of treatment doctrine did not apply because there was no forecast of evidence that the injury occasioned by the original negligence could be remedied by the treating physician.

Appeal by plaintiffs from judgment entered 25 April 2006 by Judge W. Allen Cobb, Jr. in Wayne County Superior Court. Heard in the Court of Appeals 21 February 2007.

*Bruce H. Robinson, Jr., for plaintiffs-appellants.*

*O. Drew Grice, Jr., and Robert D. Walker, Jr., for defendants-appellees.*

LEVINSON, Judge.

Shirley and Samuel Webb (plaintiffs) appeal an order of the trial court granting summary judgment in favor of Dr. Ira Hardy (defendant). We affirm.

The pertinent facts may be summarized as follows: Plaintiff (Shirley Webb) was treated by defendant for complaints of lower back and leg pain. Defendant performed surgery consisting of bilat-

eral laminectomies at the L3-4 and L4-5 levels of her spine on 30 November 1999. During the course of the surgical procedure, defendant discovered that a portion of the L5 nerve root was damaged. Consequently, defendant performed an L5 "rhizotomy," severing the L5 nerve root in two sections. During the post-operative period, plaintiff experienced numbness and pain in her left leg. Defendant initially prescribed medications, but ultimately discharged plaintiff in December 2000, informing her that there was nothing else he could do for her. Defendant referred plaintiff to two different neurosurgeons in the Fall of 2000 before referring her to UNC Hospital on 6 December 2000, where she was evaluated by Dr. Richard Toselli. Plaintiff asserts that she did not know until 19 December 2000 that her L5 nerve had in fact been severed; Toselli advised her of this as a result of his examination. Toselli advised plaintiff that "[s]he has developed chronic pain syndrome related to the L5 nerve root rhizotomy."

Plaintiffs filed a complaint against defendant on 25 November 2003, alleging negligence. However, plaintiffs voluntarily dismissed the action without prejudice on 5 April 2004 in accordance with N.C. Gen. Stat. § 1A-1, Rule 41(a). Plaintiffs thereafter filed the subject complaint against defendant on 22 March 2005, also alleging negligence.

Defendant filed a motion for summary judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 56, "on the grounds that there are no genuine issues as to any of material fact with regard to issues involving the statute of limitations and proximate cause." The trial court granted this motion on 25 April 2006. Plaintiffs appeal.

In plaintiffs' sole argument on appeal, they contend that the trial court erred by granting defendant's motion for summary judgment. Plaintiffs contend that the doctrine of continuing care tolled the statute of limitations and therefore extended the period of time she had to file the first action. Moreover, plaintiffs reason, so long as the first complaint was timely filed, their second complaint would be timely filed because their taking a voluntary dismissal of the first complaint under Rule 41(a) allowed them to file the second complaint within twelve (12) months of their dismissal.

Under N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005), summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

any party is entitled to a judgment as a matter of law." Thus, " 'the standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. Further, the evidence presented by the parties must be viewed in the light most favorable to the non-movant.' " *Duke Energy Corp. v. Malcolm*, 178 N.C. App. 62, 64-65, 630 S.E.2d 693, 695 (2006) (quoting *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998)), *aff'd*, 361 N.C. 111, 637 S.E.2d 538 (2006). Where a claim is barred by the running of the applicable statute of limitations, summary judgment is appropriate. *Brantley v. Dunstan*, 10 N.C. App. 706, 707-08, 179 S.E.2d 878, 879 (1971).

We are guided by numerous statutes of limitation. N.C. Gen. Stat. § 1-52(16) (2005) affords a three year limitations period for personal injury actions. Specifically, Section 1-52(16) provides, in pertinent part, that:

> Within three years an action—(16) Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action, <u>except in causes of actions referred to in G.S. 1-15(c)</u>, shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. . . .

(emphasis added). N.C. Gen. Stat. § 1-15(c) (2005), in turn, provides in pertinent part that:

> Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person . . . which originates under circumstances making the injury . . . not readily apparent to the claimant at the time of its origin, and the injury . . . is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. . . .

Applying these statutes, the statute of limitations would bar the second complaint. The surgery occurred 30 November 1999, and plaintiffs would generally be required to file their first action within three years thereafter. However, the first complaint was not filed until 25 November 2003, outside this period. The latent injury provision in G.S. § 1-15(c) does not apply because plaintiff became aware of defendant's alleged malpractice on 19 December 2000 at the latest. This actual discovery occurred before the two year period that is a requirement for the latent injury limitations period contained in Section 1-15(c) to apply. Even if the latent injury provision in Section 1-15(c) is somehow favorable to plaintiffs as it regards the statutory period to file an action, they make no argument whatsoever on appeal about its application, and we will not construct an argument in this regard on their behalf. Plaintiffs rely solely on the continuing course of treatment doctrine to save their complaint, and we therefore limit the following discussion to this common law doctrine.

The "continuing course of treatment" doctrine, adopted by our Supreme Court in *Horton v. Carolina Medicorp, Inc.*, 344 N.C. 133, 472 S.E.2d 778 (1996), is an exception to the rule that "the action accrues at the time of the defendant's negligence." *Locklear v. Lanuti*, 176 N.C. App. 380, 384-85, 626 S.E.2d 711, 715 (2006) (internal quotation marks and citations omitted). This Court has summarized the law concerning the continuing course of treatment doctrine:

> The doctrine applies to situations where a doctor continues a particular course of treatment over a period of time. The underlying theory of the doctrine is that so long as the doctor/patient relationship continues, the doctor is guilty of malpractice during the entire relationship for not repairing the damage he did and therefore, the cause of action arises at the conclusion of the contractual relationship. In order to benefit from the continuing course of treatment doctrine a plaintiff must show both a continuous relationship and subsequent treatment from that physician. It is insufficient to show the mere continuity of the physician/patient relationship. Rather, the subsequent treatment must be related to the original act, omission or failure to act that gave rise to the original claim.

*Whitaker v. Akers*, 137 N.C. App. 274, 278, 527 S.E.2d 721, 724-25 (2000) (internal quotations marks and citations omitted). "[T]he doctrine tolls the running of the statute for the period between the original negligent act and the ensuing discovery and correction of its consequences; the claim still accrues at the time of the original negli-

gent act or omission." *Horton*, 344 N.C. at 137, 472 S.E.2d at 781. In addition, to take advantage of the doctrine, a patient must allege the physician "could have taken further action to remedy the damage occasioned by its original negligence." *Id.*, at 140, 472 S.E.2d at 782 (addressing sufficiency of complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6)) (emphasis added)). In the context of summary judgment, applying the principles of *Horton*, there must be some forecast of evidence that the injury occasioned by the original negligence could be remedied by the treating physician.

In their brief, plaintiffs address only the fact that defendant continued to treat Shirley Webb, and do not address the requirement that the injury or damage be capable of remedial treatment(s) by the physician. We conclude, even assuming a continuing doctor/patient relationship for treatment related to the act(s) giving rise to plaintiffs' action, that plaintiffs have not forecast any evidence that defendant could have taken any action to remedy the damage occasioned by the alleged original negligence.

The record is bereft of any evidence tending to illustrate that the severed nerve in Shirley Webb's back could have been remedied. In fact, all record evidence tends to suggest the contrary contention. In response to a question about whether plaintiff's macerated nerve could not be repaired, Dr. James Melisi stated, "[t]hat's what it looks like. Yes." In addition, Shirley Webb testified that after a few months of post-operative treatment under defendant's care, during which defendant prescribed certain medications, "Dr. Hardy discharged me, he told me that there was nothing else he could do for me[.]" And after plaintiff was informed that her nerve had been severed by Dr. Tosselli at UNC, she was told "nothing" could be "done at that point." Accordingly, there is no competent evidence to suggest that plaintiff's nerve could be restored or repaired, and the continuing course of treatment doctrine is therefore inapplicable.

We conclude, applying G.S.§§ 1-52(16) and 1-15(c), that the three year statute of limitations began to run on 30 November 1999, the date of defendant's last act giving rise to the cause of action, *i.e.* the surgery. Plaintiff's first action was filed 25 November 2003, a date outside the three year limitations period. Consequently, the fact the subject complaint was filed within twelve (12) months of plaintiffs' dismissal of the first complaint cannot save this matter from summary judgment in favor of defendant.

The relevant assignments of error are overruled.

Affirmed.

Judges McCULLOUGH and BRYANT concur.