**THE GLENS OF IRONDUFF PROP. OWNERS ASS'N, INC. v. DALY**

[224 N.C. App. 217 (2012)]

THE GLENS OF IRONDUFF PROPERTY OWNERS ASSOCIATION, INC.
v.
JOHN E. DALY AND CONSTANCE V. DALY

No. COA12-52

Filed 4 December 2012

**Statutes of Limitation and Repose—failure of subdivision road—statute of repose—last act or omission—purpose of road—Planned Community Act**

The trial court did not err by granting summary judgment for defendant developers based on the statute of repose in an action arising from the failure of a farm road that was eventually paved where plaintiff property owners association contended that the action was within the statute of repose based on the paving. Plaintiff presented no evidence that paving the road was necessary for the road's undisputed intended purpose (to allow vehicular traffic access); failed to present evidence connecting the erosion of a bank to the paving; did not meet its burden of showing that the paving was the last specific act or omission giving rise to its claims; and N.C.G.S. § 47F-3-111, by its plain language, indicates that it only applies to toll statutes of limitation. Statutes of repose are fundamentally distinct from statutes of limitation.

Appeal by plaintiff from order entered 28 September 2011 by Judge Gary E. Trawick in Haywood County Superior Court. Heard in the Court of Appeals 10 May 2012.

*The Dungan Law Firm, P.A., by Robert E. Dungan, for plaintiff-appellant.*

*Cannon Law, P.C., by William E. Cannon, Jr. and Michael W. McConnell, for defendants-appellees.*

GEER, Judge.

Plaintiff The Glens of Ironduff Property Owners Association, Inc. ("the Association") appeals from an order granting summary judgment to defendants John E. Daly and Constance V. Daly ("the Dalys"). Based on our review of the record, we hold that the trial court properly determined that the Association's claims were barred by the statute of repose, and we accordingly affirm the summary judgment order.

THE GLENS OF IRONDUFF PROP. OWNERS ASS'N, INC. v. DALY

[224 N.C. App. 217 (2012)]

Facts

The Dalys were the developers of The Glens of Ironduff ("The Glens"), a planned community in Haywood County, North Carolina. The Dalys purchased the land that became The Glens in September 2001. At that time, there was an existing unpaved farm road that ultimately became part of Coyote Hollow Road. The road ran approximately parallel to a stream that was about 10 feet below the road. The slope from the road down to the stream was at a 65 to 70 degree angle.

The farm road had been compacted with stones and rocks embedded in the ground. At some point before March 2004, the Dalys widened the farm road for use by lot owners in The Glens. During that process, the stones and rocks were removed by a bulldozer and replaced with packed dirt. Upon completion of the widening of the road, the Dalys began using the road for construction traffic to build two houses. The road continued to be used for construction and by individuals who purchased lots accessed by the road.

In 2005, the Dalys paved the road. Custom Paving placed six inches of stone and two inches of hotmix asphalt on the roadway. The paving did not, however, involve any change in the grade of the road, the width of the road, or the slope of the stream bank.

In the fall of 2009, a portion of the stream bank adjacent to the road eroded and slid down to the stream. At this point in the roadway, there ceased to be any shoulder to the road. The Association hired Alpha Environmental Sciences, Inc. to evaluate the roadway embankment. The consultant determined that "[b]oth the steepness of the slope and the undercutting from the creek appear to be causing the ongoing slope failure."

On 15 January 2010, the Association, a homeowners association including all of the property owners within The Glens, wrote Mr. Daly regarding the erosion of the bank, which could eventually render the road impassable. The Association requested that Mr. Daly either fix the road or agree to reimburse the Association for the cost of eliminating the hazard.

On 30 March 2010, the Association filed suit against the Dalys asserting claims for breach of the warranty of workmanship, negligent construction, contribution and indemnification, and violation of the Sedimentation Pollution Control Act of 1973. The complaint alleged that the Dalys had negligently designed and constructed the road and that negligence was the proximate cause of the road slip-

ping and falling into the adjacent creek. The complaint sought damages in the amount of $36,500.00.

Subsequently, the Association filed an amended complaint and a second amended complaint. The second amended complaint asserted only a claim for breach of implied warranty of workmanship and fitness for purpose and a claim for negligent construction. The second amended complaint sought damages in excess of $10,000.00. The Dalys denied the material allegations of the complaint and alleged that the Association's claims were barred by the statute of limitations and statute of repose.

The Dalys subsequently filed a motion for summary judgment supported by an affidavit from John E. Daly and the Association's discovery responses. The Association opposed the motion with the affidavits of William Allen, Secretary of the Association and a property owner whose only access to his home was over the eroded road, and Francis D. Brown, the person who sold the land to the Dalys. The Association also provided the trial court with the Dalys' discovery responses, a report from a consultant who had evaluated the eroded bank, and the response to a subpoena served on an engineer retained by the Association to remedy the hazardous road condition.

At the hearing on the motion for summary judgment, defendants contended that the Association's claims were barred by the three-year statute of limitations and the six-year statute of repose, that the Association lacked standing to assert a claim of implied warranty, that the Association was contributorily negligent, and that the damages in the case were not reasonably foreseeable. On 28 September 2011, the trial court entered an order concluding, based on its review of the evidence, that "there is no genuine issue as to any material fact and that Defendants are entitle[d] to judgment as a matter of law." The court, therefore, entered summary judgment in favor of the Dalys and against the Association. The Association timely appealed to this Court.

## Discussion

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

We first address whether summary judgment was appropriate based on the statute of repose set out in N.C. Gen. Stat. § 1-50(a)(5) (2011). *See Whittaker v. Todd*, 176 N.C. App. 185, 187, 625 S.E.2d 860, 861 (2006) (holding that N.C. Gen. Stat. § 1-50(a)(5) "is a statute of repose and provides an outside limit of six years for bringing an action coming within its terms"). N.C. Gen. Stat. § 1-50(a)(5)(a) provides: "No action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement."

"Whether a statute of repose has run is a question of law." *Mitchell v. Mitchell's Formal Wear, Inc.*, 168 N.C. App. 212, 215, 606 S.E.2d 704, 706 (2005). "Summary judgment is proper if the pleadings or proof show without contradiction that the statute of repose has expired." *Bryant v. Don Galloway Homes, Inc.*, 147 N.C. App. 655, 657, 556 S.E.2d 597, 600 (2001).

Here, the Association points to the paving of the road in 2005 and argues that the road was not substantially completed until paved and, in any event, the paving was the last act or omission giving rise to its causes of action. Since this action was filed on 30 March 2010, under the Association's analysis of the facts, the action would be timely for purposes of the statute of repose.

The statute defines "substantial completion" as "that degree of completion of a project, improvement or specified area or portion thereof (in accordance with the contract, as modified by any change orders agreed to by the parties) upon attainment of which the owner can use the same for the purpose for which it was intended." N.C. Gen. Stat. § 1-50(a)(5)(c). Here, it is undisputed that the purpose of the road was to allow vehicular traffic to access lots in The Glens. The evidence is also uncontroverted that following the widening and grading of the road prior to March 2004, the road was adequate for and was used by vehicles traveling to construct houses on lots. The road continued to be used, without change, by lot owners and construction traffic prior to the paving of the road in 2005. Because the road could be used for its intended purpose, it was substantially complete prior to March 2004. *See Moore v. F. Douglas Biddy Constr., Inc.*, 161 N.C. App. 87, 90, 587 S.E.2d 479, 482 (2003) ("A house is substantially completed when it can be used for its intended purposes as a residence.").

**THE GLENS OF IRONDUFF PROP. OWNERS ASS'N, INC. v. DALY**

[224 N.C. App. 217 (2012)]

The Association, however, argues that part of the overall scheme of the development was that the roads would be paved. Regardless, the Association has presented no evidence that paving was necessary for the road to be used for its intended purpose or that the lack of paving prior to 2005 interfered with the road's use. Without that evidence, the Association has failed to show a genuine issue of material fact as to the date of substantial completion of the road. *See Nolan v. Paramount Homes, Inc.*, 135 N.C. App. 73, 76-77, 518 S.E.2d 789, 791-92 (1999) (in rejecting plaintiff's argument that substantial completion occurred upon completion of house's punch list and not upon issuance of certificate of compliance, noting that "[t]here is no evidence in this record that the items on the punch list prevented or materially interfered with plaintiff using the house as a residence").

Alternatively, the Association argues that the 2005 paving constituted "the specific last act or omission of the defendant giving rise to the cause of action." N.C. Gen. Stat. § 1-50(a)(5)(a). Review of the evidence submitted by the Association in support of its claims of defective construction of the road indicates that the Association is contending that the collapse of the shoulder and stream bank was due to the widening of the road bringing it closer to the stream and making the stream bank steeper. Although the Association points to evidence that the Dalys had placed six inches of stone covered by two inches of asphalt on the road in 2005, it has not shown that this paving gave rise to its causes of action for defective construction of the road.

The Association's interrogatory answers asserted that the road was improperly constructed because it "was placed or was left too near the stream bed, contrary to the intent of NCGS 113A-57(1)" and that "to comply with the intent of 57(2), Defendants Daly would have had to build the road even farther to the southwest so that the angle of the slope below the road surface would not have been so steep as it was left after construction. The steepness of the slope was a direct cause of the subsequent, severe erosion." The Association then asserted that if the Dalys elected to "use the routing of the pre-existing road close to the stream and not to widen the road any further," the Dalys should have then built a retaining wall or used another means to stabilize the shoulder and the stream bank.

The affidavit of William Allen submitted by the Association, although filled with hearsay, asserts that the slope should not have been left so steep. He reports that other witnesses told him that when the Dalys widened the farm road in 2002, they removed rocks that had

previously stabilized the road. Mr. Allen also claimed that when widening the road, the Dalys could have removed large rocks from the uphill side of the road and noted that a witness saw equipment working to break rocks during 2002. Mr. Allen also contended that the Dalys could have pushed fill dirt over the creek-side edge of the road, as it appears was done in some places. Ultimately, Mr. Allen asserted as evidence of the Dalys' defective construction that the Dalys had not shown "how much widening [they] accomplished by moving rocks from the uphill side" of the road and gave no "explanation of why [they] did not remove more rock on the side opposite the creek so as to make space for a sustainable slope on the creek side of the road."

In short, the Association's evidence indicates that the conduct giving rise to its claims was the placement and grading of the road—it is undisputed that those acts occurred prior to March 2004. The Association's evidence makes no reference to the 2005 paving as contributing to the cause of the erosion of the stream bank. Mr. Daly's affidavit remained uncontroverted that "the paving of the road at a later date did not involve any change in the grade of the road, the width of the road or the creek bank or slope of the creek bank that is the subject of this civil action."

The Association argues in its brief on appeal that the eight inches of added material to the surface of the road "most certainly added significant weight to the Roadway itself, which could easily be found to have contributed to the failure of the underlying slope." The brief cites to no evidence supporting this assertion, and we have found none. The Association had the burden of "establish[ing] a direct connection between the harm alleged and that last specific act or omission." *Nolan*, 135 N.C. App. at 77, 518 S.E.2d at 792. Because the Association failed to present evidence connecting the erosion of the bank to the paving, it has not met its burden of showing that the 2005 paving was the last specific act or omission giving rise to its claims.

Consequently, the Association has not shown that this action was filed less than "six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement." N.C. Gen. Stat. § 1-50(a)(5)(a). The Association further argues, however, that under the North Carolina Planned Community Act, the statute of repose does not apply to its claims. Specifically, the Association points to N.C. Gen. Stat. § 47F-3-111 (2011), which provides:

(c) Any *statute of limitation* affecting the association's right of action under this section is tolled until the period of declarant control terminates. A lot owner is not precluded from bringing an action contemplated by this section because the person is a lot owner or a member of the association.

(Emphasis added.)

By its plain language, N.C. Gen. Stat. § 47F-3-111 only tolls statutes of limitation. Contrary to the Association's contention, a statute of repose is not merely a type of statute of limitation that is encompassed by any reference to statutes of limitation. Our Supreme Court has explained how fundamentally distinct a statute of repose is from a statute of limitation:

> The distinction between statutes of limitation and statutes of repose corresponds to the distinction between procedural and substantive laws.

> Ordinary statutes of limitation are clearly procedural, affecting only the remedy directly and not the right to recover. The statute of repose, on the other hand, acts as a condition precedent to the action itself. Unlike a limitation provision which merely makes a claim unenforceable, a condition precedent establishes a time period in which suit must be brought in order for the cause of action to be recognized. If the action is not brought within the specified period, the plaintiff literally has *no* cause of action. The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress. For this reason we have previously characterized the statute of repose as a substantive definition of rights rather than a procedural limitation on the remedy used to enforce rights.

*Boudreau v. Baughman*, 322 N.C. 331, 340-41, 368 S.E.2d 849, 857 (1988) (internal citations and quotation marks omitted).

The Association has pointed to nothing indicating that the General Assembly, although referencing only statutes of limitation, also intended to toll statutes of repose. The Association cites only *Bryant v. Adams*, 116 N.C. App. 448, 456-57, 448 S.E.2d 832, 836 (1994), as support for its position. *Bryant* addressed whether N.C. Gen. Stat. § 1-17, a tolling provision for the claims of minors, applied

to toll a statute of repose as well as statutes of limitation. *Bryant*, 116 N.C. App. at 455-56, 448 S.E.2d at 835-36. N.C. Gen. Stat. § 1-17 did not, however, specifically refer to a "statute of limitation," and, therefore, this Court was not asked to construe the phrase "statute of limitation" to include a "statute of repose." Moreover, the Court based its conclusion on the fact that the General Assembly had specifically stated in the Act creating the statute of repose that nothing in the Act should be construed as amending or repealing the provisions of N.C. Gen. Stat. § 1-17. *Bryant*, 116 N.C. App. at 457, 448 S.E.2d at 836. Because of that express statement of intent, the Court held that N.C. Gen. Stat. § 1-17 tolled both statutes of limitation and statutes of repose. *Bryant*, 116 N.C. App. at 457, 448 S.E.2d at 836.

Indeed, in other contexts, when the General Assembly has intended to toll a statute of repose, it has specifically said so. *See* N.C. Gen. Stat. § 1-15.1(a) (2011) (providing that "if a defendant is convicted of a criminal offense and is ordered by the court to pay restitution or restitution is imposed as a condition of probation, special probation, work release, or parole, then all applicable statutes of limitation and statutes of repose, except as established herein, are tolled"); N.C. Gen. Stat. § 58-48-100(b) (2011) (providing that "[a]s to any person under a disability described in G.S. 1-17, the Association may not invoke the bar of the period of repose provided in subsection (a) of this section unless the Association has petitioned for the appointment of a guardian ad litem for such person and the disposition of that petition has become final").

Therefore, the plain language of N.C. Gen. Stat. § 47F-3-111 indicates that it only applies to toll statutes of limitation. It does not toll statutes of repose. The Association failed to meet its burden of showing that this action was timely under N.C. Gen. Stat. § 1-50(a)(5)(a), and, therefore, the trial court properly granted summary judgment to the Dalys. Because the action is barred by the statute of repose, we do not address the parties' other contentions.

Affirmed.

Judges ELMORE and THIGPEN concur.