HUNTER, JR., Robert N., Judge.
I. Factual and Procedural Background
On 6 January 2017, Plaintiffs-Appellants Brianna Glover ("Ms. Glover") and Randie Glover ("Mr. Glover") sought and received an Order pursuant to N.C. R. Civ. P. 9(j) extending the statute of limitations in a medical malpractice matter to 5 May 2017. The trial court extended the statute of limitations to 5 May 2017. Plaintiffs filed their summons and complaint on 3 May 2017.
Plaintiffs' medical malpractice complaint alleged the following events. Plaintiffs are married and have two children, "M.G." and "J.G." Ms. Glover became a patient of both Greater Carolinas Women's Center and Glen Ellis Powell, II, M.D. ("Dr. Powell") on or before 6 January 2011. After becoming pregnant with Plaintiffs' first child, M.G., Ms. Glover met with Dr. Powell on 13 January 2011 "for a physical exam and to discuss pregnancy related issues including testing for genetic abnormalities and/or mutations." On 9 February 2011, Ms. Glover underwent routine, voluntary testing for cystic fibrosis ("CF"). Prior to doing so, she signed a consent form from Defendants stating, in pertinent part:
CF is a debilitating respiratory and digestive disease that requires lifelong medical care and often shortens [the] lifespan of affected individuals. CF is a genetic disorder .... Couples in whom both partners are carriers have a 1 in 4 chance of having a child with CF ... If screening reveals that you are a carrier for CF, then your partner must be tested. If he is also a carrier, then your baby has a 25% chance of developing CF. You will be referred for genetic counseling and offered amniocentesis or chorionic villus sampling to test the baby for CF[.]
On 11 February 2011, the test results revealed Ms. Glover was a carrier of the cystic fibrosis mutation. The test results further "recommended that carrier testing by mutation analysis and genetic counseling be offered to the carrier (i.e. Briana Glover), relatives and reproductive partners (i.e. Randie Glover) along with appropriate genetic counseling[.]" On or after 11 February 2011, Dr. Powell "failed to review and/or incorrectly interpreted the above referenced positive testing for CF and incorrectly entered into Briana Glover's medical Patient Chart/Antepartum record that the above testing was negative." Contemporaneously with Dr. Powell's incorrect entry into Ms. Glover's chart, the electronic medical record utilized by Dr. Powell and Greater Carolinas Women's Center allowed for repopulation of the same information into Ms. Glover's chart until after the birth of their second child in December 2015.
On or about 10 March 2011, Dr. Powell "advised both Plaintiffs the CF testing was negative[.]" Plaintiffs thereafter relied upon this information in making decisions about future childbearing and conception issues. On 14 March 2011, Plaintiffs' first child, M.G., was born "a healthy baby girl without CF." Ms. Glover continued postpartum care with Defendants at Greater Carolinas Women's Center, including an appointment with another physician, Dr. Pressley, on 24 August 2011. On 15 September 2011, Dr. Powell provided Ms. Glover with family planning and "advice of contraceptive management." On 5 February 2013, Ms. Glover saw Dr. Powell at Greater Carolinas Women's Center for OB/GYN care. Ms. Glover continued her OB/GYN care with Defendants on 17 March 2014, when she again saw Dr. Powell for medical care and received advice on family planning and birth control. Ms. Glover again saw Dr. Powell on 19 March 2015 for "OB/GYN care, advice and counseling which included discussions of the health of her child and husband ...." Ms. Glover further discussed with Dr. Powell additional health issues related to birth control measures.
On 6 April 2015, Ms. Glover went to Greater Carolinas Women's Center OB/GYN, again seeing Dr. Pressley, because she believed she was pregnant, and she sought advice regarding a dental treatment and the welfare of her baby she believed she was carrying. Plaintiff was in fact pregnant, and she continued her care with Defendants. On 21 May 2015, Defendants ran tests to determine the existence of genetic abnormalities of Plaintiffs' baby. All such tests were negative. Defendants did not test to determine if Ms. Glover was a cystic fibrosis carrier, "due to the incorrectly reported and recorded CF testing from her 2011 pregnancy."
Plaintiffs' second child, J.G., was born on 5 December 2015. The delivery was "uncomplicated," and delivery records noted "no fetal conditions abnormalities." On 9 December 2015, routine screening tested their newborn to rule out cystic fibrosis. On 11 December 2015, results from that test returned as "abnormal newborn screen." Defendant Carolinas Medical Center and Novant Health Pediatrics performed follow up testing, which further suggested cystic fibrosis ; however, on 7 January 2016, Ms. Glover "refuted such results" based on Dr. Powell's ongoing representation such tests were negative. On 13 January 2016, Plaintiffs were again advised that cystic fibrosis was a high probability, which Ms. Glover again refuted based on Defendants' previous tests and a lack of family history. On 28 January 2016, Plaintiffs were advised of J.G.'s diagnosis of cystic fibrosis. J.G. was subsequently referred to specialists due to several indications of cystic fibrosis. On 18 January 2016, test results ordered by Dr. Black revealed abnormalities indicating cystic fibrosis. On 28 January 2016, Dr. Black confirmed to Plaintiffs J.G.'s cystic fibrosis diagnosis. J.G.'s chart "was documented with a diagnosis of CF" on 6 February 2016.
Plaintiffs continued care with Defendants. On 22 June 2016, Plaintiffs had an appointment with Dr. Powell, where he "honorably acknowledged his error." He documented in the chart he had not correctly informed Plaintiffs regarding the cystic fibrosis test.
Plaintiffs' complaint alleged "[a]t all times relevant ... Plaintiff Brianna Glover was under the continuous care of Defendants for issues relating to family planning including but not limited to relevant and applicable genetic testing." Further, "[a]t all times relevant ... Defendants knew or should have known that both Plaintiffs relied on the continuous care of Defendants to provide accurate advice and counsel for issues relating to family planning including but not limited to relevant and applicable genetic testing." Defendants had a "duty to provide appropriate, accurate and reasonable care and counseling regarding reproductive issues and the risks attendant with the same." Plaintiffs asserted proper testing and information would have provided the opportunity to make informed decisions about childbearing. Defendants knew or should have known Plaintiffs could "suffer severe emotional distress should they have a child with CF," "bear unanticipated and dramatically increased costs of child rearing due to medical needs and expenses of a child with CF."
Plaintiffs' complaint also asserted Defendants' negligence was the "direct and proximate" cause of Plaintiffs' damages, including "hardships," "extraordinary expenses," "stress," "severe emotion[al] distress," "loss of wages," and "other "injuries and damages as may accrue, all of which were reasonably foreseeable by Defendants." Plaintiffs sought damages for "extraordinary past and prospective care, treatment and hospitalization(s)" for J.G., compensation for "pain, and suffering from the severe emotional distress" suffered, expenses related to the care and emotional distress, lost wages, and pregnancy expenses.
On 30 June 2017, pursuant to N.C. Gen Stat. § 1A-1, Rule 12(b)(6), Defendants collectively filed a motion to dismiss Plaintiffs' complaint for failure to state a claim upon which relief can be granted. In their motion, Defendants stated Plaintiffs' claim for wrongful birth and damages related to " 'the extraordinary expenses for their son's care' " are not recognized by North Carolina law. Defendants further asserted Plaintiffs' complaint was "barred by the applicable four (4) year statute of repose set forth in N.C. G. S. § 1-15(c)."
On 6 July 2017, the trial court filed notice of the hearing for Defendants' motion to dismiss. On 28 July 2017, the trial court filed an amended notice of the hearing.
On 5 September 2017, the trial court heard Defendants' motion to dismiss. Defendants first addressed the court asserting the statute of repose barred Plaintiffs' claims, since Plaintiffs filed the lawsuit "more than six years after the negligent act" of which they complained. Defendants noted Dr. Powell treated Ms. Glover during her first pregnancy under the "belief that she has this negative test for cystic fibrosis." Subsequently, Ms. Glover received "no intervening care for 18 months" after the birth of her first child, M.G. While Ms. Glover consulted with Dr. Powell for gynecological care in a "nonpregnant state," her pregnancy care in April 2015 was "more than four years from when Dr. Powell initially interpreted this cystic fibrosis test." Defendants noted Plaintiffs filed the complaint "more than six years beyond the negligent act at issue." Additionally, Defendants asserted Plaintiffs relied on a "continued course of treatment" theory in order to extend the statute of limitations. Because of the "18-month gap between delivery of the first child[,] then following up for routine gynecological care," Defendants argued "this is about a continuous course of treatment[,]" rather than "continuing the [doctor/patient] relationship." Defendants argued "we have one negligent act[,] [a]nd it's interpreting one test during one pregnancy." Further, there was "an entirely separate, distinct, second pregnancy[,]" with treatment provided to Plaintiffs "unrelated to the [first] pregnancy, unrelated to the genetic testing[.]" Defendants argued accordingly, the complaint was filed outside the statute of repose and should be dismissed.
Plaintiffs next addressed the trial court. Plaintiffs stated Ms. Glover's first appointment with Dr. Powell on 13 January 2011, while Ms. Glover was pregnant, included cystic fibrosis testing. The purpose of the test, according to Plaintiffs, was not only to look at this child, "but to look-prospective to look at any children she and her husband may have." Plaintiffs asserted, "doctors would certainly not have given [Ms. Glover] advice on contraception and family planning ... if they had thought she had a positive cystic fibrosis test." Ms. Glover received advice and consultation about birth control in 2014. In March of 2015, Ms. Glover came in again for counseling for birth control. Defendants "stopped [Ms. Glover's] birth control pills." At the time, Ms. Glover was "barely pregnant" or "7 to 10 days pregnant." In December 2015, Ms. Glover gave birth to her second child, J.G, who was born with cystic fibrosis. Plaintiffs argued the statute of limitations had not run, and they "have a valid cause of action for the negligent infliction of emotional distress occasioned by these events."
After hearing arguments from both sides, in its 13 September 2017 order the trial court dismissed Plaintiffs' complaint with prejudice because the complaint failed to state a claim upon which relief may be granted based on: (1) the running of the statute of repose; (2) any claim for wrongful birth, to the extent Plaintiffs alleged such a claim; and (3) any claim for wrongful conception, to the extent Plaintiffs asserted such a claim, as to damages for extraordinary costs associated with rearing a child with cystic fibrosis.
Plaintiffs filed written notice of appeal on 29 September 2017.
II. Jurisdiction
This Court has jurisdiction over a final order of the trial court. N.C. Gen. Stat. § 7A-27(b)(1) (2017). The trial court's order as to the statute of repose was final; accordingly, we have jurisdiction over the court's ruling as to that issue. See id . The trial court's order as to Plaintiffs' claims for wrongful birth and wrongful conception were partial, and thus not final. See id . Because we reverse on the issue of the statute of repose, we do not have jurisdiction on the two subsidiary issues as to availability or extent of damages.
III. Standard of Review
This Court reviews a 12(b)(6) motion to dismiss considering "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory[.]" Harris v. NCNB Nat. Bank of North Carolina , 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). "A complaint is sufficient to withstand a motion to dismiss where no insurmountable bar to recovery on the claim alleged appears on the face of the complaint and where allegations contained therein are sufficient to give a defendant notice of the nature and basis of [a plaintiff's] claim so as to enable [them] to answer and prepare for trial." McAllister v. Ha , 347 N.C. 638, 641, 496 S.E.2d 577, 580 (1998) (citation omitted). Further, "when the allegations in the complaint give sufficient notice of the wrong complained of, an incorrect choice of legal theory should not result in dismissal of the claim if the allegations are sufficient to state a claim under some legal theory." Id. at 641, 496 S.E.2d at 580 (citation omitted). "On appeal of a [ Rule] 12(b)(6) motion to dismiss, this Court conducts a de novo review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A. , 231 N.C. App. 70, 74, 752 S.E.2d 661, 663-64 (2013) (citation omitted). We decide a question presented on a Rule 12(b)(6) motion to dismiss on the basis of factual allegations in the complaint, taking them as true. Hargett v. Holland , 337 N.C. 651, 653, 447 S.E.2d 784, 786 (1994) (citing Jackson v. Bumgardner , 318 N.C. 172, 174-75, 347 S.E.2d 743, 745 (1986) ).
Whether a statute of repose has run is a question of law. Glens of Ironduff Prop. Owners Ass'n v. Daly , 224 N.C. App. 217, 220, 735 S.E.2d 445, 447 (2012) (citation omitted). It is well settled "[q]uestions of statutory interpretation are ultimately questions of law for the courts and are reviewed de novo." In re Summons of Ernst & Young , 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009) (citation omitted).
IV. Analysis
On appeal, Plaintiffs assign error to the trial court for (1) dismissing their complaint based upon the improper application of the statute of repose, and (2) dismissing their damages claim in a wrongful conception action for extraordinary expenses of raising a child with cystic fibrosis.
This appeal presents the question of whether a claim for professional malpractice against a doctor for alleged negligence in interpreting and/or communicating test results is barred by the four-year statute of repose contained in our professional malpractice statute of limitations, N.C. Gen. Stat. § 1-15(c) (2017), when the claim is filed more than six years after the doctor interpreted and/or communicated the results. Section 1-15(c) provides:
Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action : Provided further, that where damages are sought by reason of a foreign object, which has no therapeutic or diagnostic purpose or effect, having been left in the body, a person seeking damages for malpractice may commence an action therefor within one year after discovery thereof as hereinabove provided, but in no event may the action be commenced more than 10 years from the last act of the defendant giving rise to the cause of action.
Id. (emphasis added). Medical malpractice is, in pertinent part, a "civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11 (2)(a) (2017).
A defense under a statute of limitations or statute of repose may be raised via a motion to dismiss if it appears on the face of the complaint that such a statute bars the claim. Hargett , 337 N.C. at 653, 447 S.E.2d at 786 (citations omitted). "Unlike statutes of limitations, which run from the time a cause of action accrues, 'statutes of repose ... create time limitations which are not measured from the date of injury. These time limitations often run from defendant's last act giving rise to the claim or from substantial completion of some service rendered by defendant.' " Id. at 654, 447 S.E.2d at 787 (quoting Trustees of Rowan Tech. v. Hammond Assoc. , 313 N.C. 230, 234 n.3, 328 S.E.2d 274, 276-77 n.3 (1985). Further, "[a] statute of repose creates an additional element of the claim itself which must be satisfied in order for the claim to be maintained." Id. at 654, 447 S.E.2d at 787 (citation omitted). Differing from a limitation provision that makes a claim unenforceable, section 1-15 (c) establishes, therefore, a time period in which a claim based on professional malpractice
must be brought in order for that cause of action to be recognized ... [and] if the action is not brought within the specified period, the plaintiff literally has no cause of action ... [t]he harm that has been done is damnum absque injuria -a wrong for which the law affords no redress.
Id. at 655, 447 S.E.2d at 787 (emphasis original) (internal quotations and citations omitted).
Our Supreme Court has provided guidance for calculating the statute of repose, explaining it begins
when a specific event occurs, regardless of whether a cause of action has accrued or whether an injury has resulted .... Thus, the repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue, which is generally recognized as the point in time when the elements necessary for a legal wrong coalesce.
Id. at 655, 447 S.E.2d at 788 (quoting Black v. Littlejohn , 312 N.C. 626, 633, 325 S.E.2d 469, 474-75 (1985). Moreover, "[r]egardless of when plaintiffs' claim might have accrued, or when plaintiffs might have discovered their injury, because of the four-year statute of repose, their claim is not maintainable unless it was brought within four years of the last act of defendant giving rise to the claim." Id. at 655, 447 S.E.2d at 788 (citations omitted).
Using this guidance, the Hargett Court held defendant, an attorney who contracted to prepare a will after which defendant was an attesting witness to the will, had a duty to prepare and supervise the execution of the will. Id. at 655, 447 S.E.2d at 788. Such arrangement did not, however, "impose on defendant a continuing duty thereafter to review or correct the prepared will, or to draft another will." Id. If an ongoing relationship between the attorney and client had been alleged to exist between the testator and defendant, or if factual allegations led to such an inference, then the complaint might have been sufficient to survive the motion to dismiss. Id.
Key to the Court's reasoning was the concept of "continuing professional duty." See id. at 656, 447 S.E.2d at 788. Such a concept arises in medical malpractice claims in which a continuous course of treatment occurs of the patient by the physician. While "an attorney's duty to a client is ... determined by the nature of the services he agreed to perform[,]" likewise, "a physician's duty to the patient is determined by the particular medical undertaking for which he was engaged[.]" Id. at 656, 447 S.E.2d at 788.
Under this theory, malpractice is viewed as a continuing tort based on the physician's actions in continuing and repeating the wrongful treatment without correction. Ballenger v. Crowell , 38 N.C. App. 50, 58, 247 S.E.2d 287, 293 (1978) (citations omitted). Thus, "the 'continuing course of treatment' doctrine has been accepted as an exception to the rule that 'the action accrues at the time of the defendant's negligence.' " Stallings v. Gunter , 99 N.C. App. 710, 714, 394 S.E.2d 212, 215, rev. denied 327 N.C. 638, 399 S.E.2d 125 (1990) (quoting Ballenger v. Crowell , 38 N.C. App. at 58, 247 S.E.2d at 293 ). The Stallings Court announced:
Because the "continuing course of treatment" doctrine affects determination of the accrual date, and the accrual date under § 1-15(c) is the starting date for the running of the statute of limitation and statute of repose, it is correct to use the "continuing course of treatment" doctrine to determine the start date for running of the statute of repose. It is only by using the doctrine that a court can determine defendant's relevant "last act."
Id. at 715, 394 S.E.2d at 216. The Court further ruled "the action accrues at the conclusion of the physician's treatment of the patient, so long as the patient has remained under the continuous treatment of the physician for the injuries which gave rise to the cause of action." Id. at 714, 394 S.E.2d at 215 (citation omitted). Moreover:
To take advantage of the 'continuing course of treatment' doctrine, plaintiff must show the existence of a continuing relationship with his physician, and ... that he received subsequent treatment from that physician. Mere continuity of the general physician-patient relationship is insufficient to permit one to take advantage of the continuing course of treatment doctrine. Subsequent treatment must consist of either an affirmative act or an omission [which] must be related to the original act, omission, or failure which gave rise to the cause of action. However, plaintiff is not entitled to the benefits of the 'continuing course of treatment' doctrine if during the course of the treatment plaintiff knew or should have known of his or her injuries.
Id. at 715, 394 S.E.2d at 216 (internal quotations and citations omitted, alterations in original).
On multiple occasions, our appellate courts have considered whether the "continuing course of treatment" doctrine applied in a particular case. See e.g. , Horton , 344 N.C. at 139, 472 S.E.2d at 782 (applying continuing course of treatment doctrine to plaintiff's claim for negligent insertion of a catheter to find action barred when brought more than three years after defendant's last act giving rise to action); Stallings , 99 N.C. App. at 716, 394 S.E.2d at 216 (finding patient did not have the benefit of the continuing course of treatment doctrine since more than four years had passed from date general dentist informed patient of dental problems). Under the doctrine, a plaintiff need not show the treatment rendered subsequent to the negligent act was also negligent, so long as the physician continued to treat the patient for the particular disease or condition created by the original act of negligence. See Horton , 344 N.C. at 139, 472 S.E.2d at 782. Additionally, a plaintiff must allege the physician could have taken further action to remedy the damage caused by the original negligence. See Webb v. Hardy , 182 N.C. App. 324, 328, 641 S.E.2d 754, 757 (rev. denied 361 N.C. 704, 653 S.E.2d 879) (2007).
Here, Plaintiffs argue the trial court's factual finding that "the continuing course of treatment doctrine is inapplicable" is "completely contrary to the allegations" in their complaint. The time frame for filing their wrongful conception, negligent infliction of emotional distress, and economic damages claims was "tolled under the 'continuing course of treatment' doctrine," and Plaintiffs then timely filed their claims.
Dr. Powell does not deny having misread or misinterpreted the test results for cystic fibrosis ; rather, Defendants assert Plaintiffs' medical malpractice action is statutorily barred and not excepted by the "continuing course of treatment" doctrine. Defendants argue Dr. Powell's treatment "was not continuous and did not relate back to the original negligent act" of the cystic fibrosis carrier test.
On de novo review, we must assess whether Plaintiffs' claims exist under some legal theory, see Ha , 347 N.C. at 641, 496 S.E.2d at 580, taking factual allegations as true, see Hargett , 337 N.C. at 653, 447 S.E.2d at 786. In order to assess whether the statute of repose bars Plaintiffs' claims, we must determine "the time of the occurrence of the last act of the defendant giving rise to the cause of action[.]" See N.C. Gen. Stat. § 1-15(c). To do so, we consider the particular medical undertaking for which Defendants' services were engaged. See Hargett , 337 N.C. at 656, 447 S.E.2d at 788.
From 6 January 2011, when Ms. Glover first became a patient of Defendants, and 13 January 2011, when she first met with Dr. Powell, to 22 June 2016, when Plaintiffs learned Dr. Powell had incorrectly informed Plaintiffs Ms. Glover was not a carrier of cystic fibrosis, Ms. Glover sought and received OB/GYN care, advice, and counseling. During that time, her care included, for example, information on family planning, child health, and birth control. Far beyond a general physician-patient relationship-one that might focus on health issues such as height, weight, or blood pressure screenings-Plaintiffs relied on family planning advice throughout the ongoing relationship. Dr. Powell affirmatively offered family planning advice, and Defendants' further omission-not correcting their error as to the cystic fibrosis test-was crucial to the family planning advice. See Stallings , 99 N.C. App. at 715, 394 S.E.2d at 216. Unlike the relationship described in Hargett , in which an attorney had no continuing duty to plaintiffs once a will was drafted, Defendants here had a continuing duty to care for Plaintiffs, based on the ongoing family planning and health needs undergirding the relationship. See Hargett , 337 N.C. at 656, 447 S.E.2d at 788. Defendants continued and repeated the wrongful treatment without correction. See Ballenger , 38 N.C. App. at 58, 247 S.E.2d at 293. Further action taken to correct the test results could have remedied the danger caused by the original act. See Webb , 182 N.C. App at 328, 641 S.E.2d at 757.
Moreover, Plaintiffs did not know, nor should they have known, of the malpractice that had occurred-that of incorrect information regarding Ms. Glover being a cystic fibrosis carrier-until the birth of their son, J.G. It would be senseless to expect Plaintiffs would presciently know of the misinformation, before a problem arose, and would leave no recourse for Plaintiffs. As they moved forward with family planning decisions, such unknown abnormalities could have arisen many years later. No matter the number of years, the information would have been new to Plaintiffs. For the above reasons, we find the "continuing course of treatment" doctrine squarely applies.
Because the "continuing course of treatment" doctrine is an exception to the rule that the action accrues at the time of the defendant's negligence, see Stallings , 99 N.C. App. at 714, 394 S.E.2d at 215, our calculation of time limitations for Plaintiffs to bring their claims does not begin at the time of injury-when Dr. Powell incorrectly communicated to Ms. Glover regarding the cystic fibrosis carrier test results. Rather, the claim accrues from Defendants' last act giving rise to the claim-the treatment of Ms. Glover and advice to Plaintiffs for family planning. See Hargett , 337 N.C. at 655, 447 S.E.2d at 788 ; see also Stallings , 99 N.C. App. at 715, 394 S.E.2d at 216. Dr. Powell's original act of negligence misinterpreting the cystic fibrosis test results occurred on 11 February 2011. Plaintiffs concede if Ms. Glover was already pregnant during the 19 March 2015 appointment, during which she received "OB/GYN care, advice and counseling which included discussions of the health of her child and husband ... [,]" then the last preconception appointment after which she could have made family planning decisions was on 17 March 2014.
We conclude Defendant's last act giving rise to the claim occurred on 17 March 2014, Ms. Glover's last preconception appointment. The 17 March 2014 appointment was within the three year statute of limitations, after obtaining the 120-day filing extension, and not more than four years after Plaintiffs received continuing care and advice regarding family planning. Accordingly, Plaintiffs' claim is not barred by the four-year statute of repose set forth in N.C. Gen. Stat. § 1-15(c).
We further conclude, taking the factual allegations as true, the complaint states a claim upon which relief may be granted. Plaintiffs alleged in their complaint medical malpractice, negligent infliction of emotional distress, and economic damages. Because the trial court dismissed Plaintiffs' complaint in error, we reverse and remand for further proceedings consistent with this decision.
REVERSED AND REMANDED.
Report per Rule 30(e).
Judges ELMORE and ZACHARY concur.